1  Danny Atterbury
2  2100 Napa Vallejo Hwy.
   Napa, CA 94558
3  In pro per



IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DANNY ATTERBURY,<br><br>Plaintiff,<br><br>v.<br><br>ED FOULK, et al., & SOCIAL SECURITY COMISSIONER,<br><br>Defendant. | NO. CV 07 6256 MHP (PR)<br>CV 07 6307 MHP (PR)<br><br>REQUEST FOR PROCESS TO ISSUE IN TWO CASES FILED LAST YEAR, AND REQUEST FOR COURT EXEMPTION FROM PRISON LITIGATION REFORM ACT (PLRA) (TITLE 18 U.S.C § 3626.) |
|---|---|

### Introduction

I Plaintiff Danny Atterbury filed a Title 42 USC § 1983 Civil Rights Lawsuit and a "Complaint for Judicial Review of Decision of Social Security Commissioner," in 2007 and these actions were given the case numbers listed above respectively. However, process has not been served in either action, the constitutional violations I complained about in the complaints continue and have even multiplied and increased, and I would like the district court to serve summons as soon as possible.

### Points and Authorities

I realize that the federal courts are busy, but according to Federal Rules of Civil Procedure, Rule 4(a), "[u]pon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal or to a person specially appointed to serve it." (*Franklin v. State of Oregon*, 662 F.2d 1337, 1341 (9th Cir. 1981) The only circuit that has specifically addressed the meaning of this sentence in the context of sua sponte dismissals of

1

complaints has held that Rule 4(a) requires "the clerk to immediately issue a summons and deliver it to the marshal for service 'without exception.' " (*Nichols v. Schubert*, 499 F.2d 946, 947 (7th Cir. 1974); *Vina v. Hub Electric Co.*, 480 F.2d 1139, 1140 (7th Cir. 1973).

## The Prison Litigation Reform Act

The Prison Litigation Reform Act (PRLA) and many of its provisions appear to be in direct conflict with the United States Supreme Court rulings favoring liberality to pro se pleadings, which "is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel and the Supreme Court has held that allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers." (See *Noll v. Carlson* (9th Cir. 1986) 809 F.2d 1446, 1448), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) (Per Curiam); see also *Maurer v. Individually and as Members of Los Angeles County Sheriff's Dept.*, 691 F.2d 434, 437 (9th Cir.1982); *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir.1980). (See also *Baslistreri v. Pacifica Police Dept.*, 901 F. 2d 696 (9th Cir. 1990); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987), quoting, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982).

I was committed to a California State Mental Hospital pursuant to California Penal Code, § 1026 and I respectfully state that persons committed in accordance with section 1026 should be exempted from all provisions of the PRLA, because section 1026 patients are not supposed to be considered as or treated like prisoners. The Court in *Blas v. Endicott* explained the legislative history of the PLRA, as well as congressional comments concerning the PLRA after its passage and stated "[i]t is beyond dispute that the primary purpose of the PLRA, and the exhaustion provisions in particular, was to reduce the inordinately large volume of *prisoner cases* being filed in the federal courts." (*Blas v. Endicott* (1999) 31 F.Supp.2d 1131, 1133.) (Italics mine.) The *Blas v. Endicott* Court nor did NOT say that the primary purpose of the PLRA was to reduce the inordinately large volume of *mental patients cases* being filed in the federal courts, and could not say so because only a minute number of cases have been filed in the federal courts by mental patients or by lawyers representing mental patients during the entire history of the federal courts and the history of the mental "health" system.


Mental patients committed under California Penal Code, § 1026 are not prisoners under California law, and have been found not guilty of committing the crime and cannot be punished by incarceration in prison, and mental patients are supposed to receive "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." (*Sharp vs. Weston*, 233 F. 3d 1166, 1172 (9th Cir. 2000), quoting *Youngberg v. Romeo* (1982) 457 U.S. 307 at 322, 102 S.Ct. 2452; Cf. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); See also W&I Code § 6250) (Mentally disordered persons charged with crime or to the criminally insane subject to judicial commitment shall be treated, not as criminals, but as sick persons.)

I submit that mentally disabled litigants confined in state institutions are entitled to at least the same degree or perhaps even more safeguards to meaningful access to the courts, than inmates confined in prisons have a constitutional right to meaningful access to the courts. (*See Ward v. Kort*, 762 F.2d 856, 858 (10th Cir.1985); *Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir.1983); *King v. Atiyeh* (9th Cir. 1987) 814 F.2d 565, 568 fn 2).

By merely entering a few keywords into a good Internet "search engine" it is simple to verify that only a minute number of cases have been filed in the federal courts by mental patients or by lawyers representing mental patients during the entire history of the federal courts and the history of the mental "health" system; and despite the wasted billions of dollars pumped into mental institutions over the years, all the flowery language, and the "civil label-of-convenience" (*In re Gault* (1967) 387 U.S. 1, 50) applied, mental patients are actually a forgotten, abused, and disenfranchised class of persons. In fact, even the CRIPA (Civil Rights of Institutionalized Persons Act) has proven to be ineffective in protecting and redressing violations of mental patients' rights, and I can produce ample evidence of this. (More on this below.)

The discussion in *Developmental Services v. Ladd* shows the sharp distinction between mental patients and prisoners. In pertinent part, the Court in that case explained "[t]he primary purpose of the state hospital system is to provide for the care, treatment and education of its mentally disordered patients. (§§ 4304, 7200.) Of significance is the post-Hawley and Kirchner legislative declaration that mentally disordered persons—regardless of their path to the institution—should be regarded as patients rather than inmates. Section 4132, operative July 1, 1969,6 provides: 'It is hereby declared that the provisions of this code reflect the concern of the

3

Legislature that mentally disordered persons are to be regarded as patients to be provided care and treatment and not as inmates of institutions for the purposes of secluding them from the rest of the public. Whenever any provision of this code heretofore or hereafter enacted uses the term 'inmate,' it shall be construed to mean 'patient.'" (*Department of Developmental Services v. Ladd* (1990) 224 Cal.App.3d 128, 138.)

The Court deciding *People v. Buttes* explained "[t]here is a fundamental difference between an MDSO and a person who has been acquitted by reason of insanity. The latter has been found not guilty of committing the crime and cannot be punished by incarceration in prison (Pen. Code, § 1026). The MDSO has been found guilty of a crime, and the court has the option of sending him to prison if he is not committed to a state hospital. By contrast, the insane defendant can never be sent to a prison." (*People v. Buttes* (1982) 134 Cal.App.3d 116, 117.)

Even though mental patients confined in state hospitals are supposed to have more rights and be treated better than prisoners confined in prisons, that opposite is true in a variety of ways. When prisoners encounter any legal problems the Prison Law Office at San Quentin, a privately supported group of attorneys who are supported in major part by a charitable foundation and provide direct legal services at no cost to prison inmates, have represented over 5,000 prisoners since the office was founded in 1976 and are still representing indigent inmates at no cost. (See *In re Head* (1986) 42 Cal.3d 223, 234.) However, Protection and Advocacy (PAI), Inc., a huge legal organization that receives a lot of "big money donations" from federal, state, and private sources and is mandated to advocate for persons with developmental and psychiatric disabilities, will not meaningfully advocate for the patients in NSH no matter how much they are abused and their constitutional rights are violated. (See Protection and Advocacy Mentally Ill Individuals Act of 1986 ("PAMII"), 42 U.S.C. §§ 10801-10851.)

Some patients believe that PAI is virtually impotent and will not meaningfully advocate for the NSH patients because PAI receives huge donations form the California Department of Mental Health (DMH) and there is a conflict of interest and PAI does not want to "bite the hand that feeds them." There are many provisions in the contract between PAI and DMH that convey a strong "conflict of interest" and this is thought to contribute to the failure of PAI to meaningfully advocate for the Napa State (mental) Hospital (NSH) patients.

The evidence of PAI's failures is overwhelming, and the biggest single proof of this is that if PAI did their job properly, the USDOJ would not have had to intervene twice with CRIPA Investigations and lawsuits under Title 42 U.S.C. § 1997, during the past decade and a half. (See C 90 2641 EFL, September 13, 1990, US District Court, Northern District, CA; CV 06-2667 GPS), filed Tuesday, May 2, 2006, United States District Court, Central District of CA, Western Division.)

Regardless of two CRIPA Investigations and two lawsuits, the constitutional violations of the mental patients' rights continue unabated at NSH and I was told this is due to the conflict of interest Los Angels Times Newspaper staff write Lee Romney revealed in the May 2, 2006 issue and following issues of the L.A. Times. Lee Romney reported that the monitor, Psychiatrist Mohammed El Sabaawi, court appointed to implement and oversee the May 2, 2006 Consent Judgment the USDOJ made with NSH was retained from the Human Potential Consulting Group," in Alexandria Virginia, which is where NSH has retained its consultants for years before the Consent Judgment was entered. Lee Romany revealed that NSH consultant psychologist Nirbhay Singh, retained from the Human Potential Consulting Group," in Alexandria Virginia, worked for NSH at 1.1 million dollars per year for several years prior to the Consent Judgment to "reinvent the wheel," at NSH or in this case "reinvent the Service Center" and call it the "Treatment Mall." The "frosting on the cake" is that Lee Romney revealed that Mohammed El Sabaawi and Nirbhay Singh were both trained in New Zealand to treat developmentally disabled (mentally retarded) persons and Mohammed El Sabaawi and Nirbhay Singh are friends and know each other well. It has been postulated that there exists a conflict of interest between what is good for the patients and what is good for Mohammed El Sabaawi's wallet and this is why the violations continue.

NSH does not provide and even blocks access to sufficient legal research materials to prepare pro se pleadings, appeals, and other legal documents. NSH subscribed to the West's Publishing Company West Mate computerized online legal research system for about one decade and permitted a few of the patients to infrequently use this system to do legal research. However, in May of 2006, not long after the United States Department of Justice (USDOJ), Civil Rights Division, Special Litigation Section, discontinued a CRIPA lawsuit against NSH and obliged NSH officials to sign a consent judgment on May 2, 2006, I discovered that the Westlaw subscription had been discontinued and the substandard, outdated by one year, and

not user friendly legal research system owned by the "Touch Sonic Technologies, Inc.," that frequently malfunctions had been installed in the place of the West Mate system.

Timing can be considered as circumstantial evidence of retaliatory intent (*Pratt v. Rowland* (1995) 65 F.3d 802, *quoting Soranno's Gasco, Inc. v. Morgan* (9th Cir. 1989) 874 F.2d 1310, 1316), and some patients suspect that the NSH administration cancelled the West Mate subscription in retaliation right after the USDOJ dropped the lawsuit, and when NSH felt it was safe to do so to prevent the patients from accessing the courts and exposing them any further, considering that patients were using the West Mate system to sue NSH in federal court.

### Request for Relief

Therefore, I respectfully request the Court to order process served in both cases and exempt both cases from the Prison Litigation Reform Act.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, memory, and belief.

Respectfully submitted,                    Date: April 14, 2008

Danny Atterbury

*April 13, 2008*
Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558

Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California, 94102

**RE:**   Docket Request For
NO. CV 07 6256 MHP (PR)
CV 07 6307 MHP (PR)

TO THE COURT CLERK:

Please file the enclosed pleading titled "REQUEST FOR PROCESS TO ISSUE IN TWO CASES FILED LAST YEAR, AND REQUEST FOR COURT EXEMPTION FROM PRISON LITIGATION REFORM ACT (PLRA)."

Please find one United States Dollar enclosed and please use this as payment for a printout of the docket sheet of all the events and filings concerning the case numbers listed above.

Respectfully submitted,

Danny Atterbury

*[signature]*



Please stamp legal mail for $12.50 Client, as advised per Mr. Ed Foulk's April 3, 2008 letter the issue was resolved with Patients' Rights Office Assistance.

Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California, 94102

Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558

**Legal Mail**
Mailed on 14-Apr-08