Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558
In pro per

FILED

08 AUG 11 PH 1:41

DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY ATTERBURY | No. CV 07 6256 MHP (PR) |
| Plaintiff, | MOTION TO AMENDED COMPLAINT |
| v. | |
| ED FOULK; et al., | |
| Defendants. | |

## INTRODUCTION

In accordance with the Courts order issued on August 1, 2008, I hereby submit a motion and a proposed amended complaint. I ask the court to bear in mind that I am in and have been in tremendous pain for eight years and I am physically ill and weak from my place of confinement at Napa State Hospital failing to provide proper and meaningful medical care for a spinal injury and a liver infection that I was told is potentially fatal.

Neither the inmates' [patients'] library nor the Touch Sonic Technologies, Inc., legal research computer at my place of confinement contains the materials on the "Lindquist List," or any legal books that meet minimum constitutional standards and neither the library nor the Touch Sonic system provides inmates with sufficient access to legal research materials to prepare pro se pleadings, appeals, and other legal documents. (See *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851, 856 (9th Cir. 1985)

1



1    I do not have all the modern conveniences and technologies that the defendants have and

2  I am also at a disadvantage in several other ways. (Cf. *Andrews v. United States*, 398 F.3d 1113,

3  1120 (9th Cir. 2005), citing *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)

    Please accept my attached proposed amended complaint. I declare under penalty of

4  perjury the foregoing is true and correct to the best of my knowledge, information, memory, and

5  belief.

6  Respectfully submitted,                                   Date:  8/8/08

7  Danny Atterbury

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558
In pro per

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| DANNY ATTERBURY | No. CV 07 6256 MHP (PR) |
|---|---|
| Plaintiff, | PROPOSED AMENDED COMPLAINT |
| v. | |
| ED FOULK; et al., | |
| Defendants. | |

## AMENDMENT

### Count One

On April 23, 2007, defendant Katie Cooper caused me to be transferred from Ward T-4 to the much less favorable Ward T-7, in retaliation for my complaints and because I do not believe in psychiatry and psychology and I refuse to participate. Ward T-4 is a more agreeable place to be housed because it is calmer and less violent, among other things. Defendant Cooper told me that I was being transferred to Ward T-7 because I had asked to be moved to an honor unit and I was going to Ward T-7 to wait for bed space to open on an honor unit. I complained that I did not want to be on Ward T-7 because of my age, disability and pain from an old spinal injury caused by a .38 caliber gunshot wound to my spine years ago and aggravated by a fall at NSH in 2001, Ward T-7 is more dangerous than Ward T-4, I have trouble keeping my balance and might and fall get injured worse because I cannot block an attack very well, loss of privileges, and moving someone to Ward T-7 is not the procedure to get to an honor unit.

1

1    Defendant Cooper had me moved to Ward T-7 anyway, and my personal property,

2  including computer, television, computer printer, and legal papers, materials, and files filled two

3  plastic laundry carts and Katie Cooper's Ward T-4 Unit Supervisor Jerry Wright would only let

me take a few things with me to Ward T-7, contrary to hospital rules, and made me leave the

4  bulk of my property, including my legal files, behind for about one week until Mr. Jeff Griffin at

5  the Los Angeles CCHR Office telephoned Susan Kessler, Napa State Hospital Patients' Rights

6  Advocate several times and complained.[1]

7    Susan Kessler told me that defendant psychiatric technician Program 1 Manager Mike

Stolp would not permit me to retrieve all of my property and she wrote that on a formal response

8  to a complaint form and I sent copies to various places outside the institution. Finally after Mr.

9  Griffin called Kessler several times, Mike Stolp's subordinate, psychiatric technician Ward T-7

10  Unit Supervisor, Demetrius Henderson took me to Ward T-4 and Demetrius and I pushed the

11  Two laundry carts full of my property and legal files to Ward T-7 although this caused me

considerable spinal pain. I was permitted to keep some of my property and legal files in my
12
personal property storage locker by my bed on Ward T-7, but I was made to store the bulk of my

13  legal files and documentary evidence in a box in a closet in the computer room in another part of

14  the Program 1 building out of my sight and control and was only allowed infrequent, extremely

15  limited, and virtually no access to these files and evidence from April of 2007 until April of

16  2008.

17    In the beginning of April 2008, I persuaded Demetrius Henderson to bring several boxes

of my legal materials to Ward T-7, Room #724, where I resided and permitted me to sort out my

18  legal materials and ascertain if anything was missing from my legal materials when they were

19  confiscated and retained on April 23, 2007. However, on April 17, 2008, defendant Mike Stolp's

20  subordinates psychiatric technician Dawn Simon and psychiatric technician Virgil Waller Junior

21

22  [1]The Citizens Commission on Human Rights (CCHR) International was established in 1969 by the Church of Scientology to investigate and
expose psychiatric violations of human rights, and to clean up the field of mental healing. Today, it is estimated that CCHR has more than 250
chapters in over 31 countries. Its board of advisors, called Commissioners, includes doctors, lawyers, educators, artists, business professionals,

23  and civil and human rights representatives. CCHR has inspired and caused many hundreds of reforms by testifying before legislative hearings and
conducting public hearings into psychiatric abuse, as well as working with media, law enforcement, and public officials the world over. (CCHR:
www.cchr.org • www.psychdrugsdangers.com • e-mail: humanrights@cchr.org. www.psychcrime.org • http://www.dodig.osd.mil/INV/DCIS)
(CCHR: Tele: (323) 467-4242 • (800) 869-2247 • (800) 942-2247 • see also Bill Sargent, Shasta County at (530) 472-3299 • e-mail-cchr@jett.net

24  • e-mail-sarge@jett.net)

25

26

27

28                                           2

1  arranged for psychiatric technicians from Ward Q-3&4 to come to Ward T-7, and rifle through

2  my personal property storage locker and my living areas, and conduct a search and seizure before

3  I had finished sorting through the legal materials originally confiscated on April 23, 2007, to
   ascertain if any materials were missing.

4      At about 8:00 AM on April 17, 2008, Virgil Waller started going from door to door and

5  yelling there was an emergency and all the patients must exit the building for their own safety.

6  Virgil then herded all the patients, including me, into the Ward T-7 Courtyard and we were made

7  to stay there for a couple of hours as psychiatric technicians from Ward Q-3&4 [ostensibly]
   searched through the patients' rooms. Demetrius Henderson came to the Courtyard at about 9:30

8  AM and I told him that I have the right under AD #786 and Title 9, California Code of

9  Regulations, § 883(b)(1) to observe staff searching my room and they are not supposed to take

10  anything without making a list and giving me a receipt. Demetrius Henderson refused to let me

11  observe the search and said that he would personally search my room and have Ward
   Government patient representative Tim Gillman observe him search my living areas and locker.

12      I saw Tim Gillman some time later and Tim said that Demetrius did not take anything

13  and did not make a mess. However, the patients, including me, were all shuffled from the Ward

14  T-7 Courtyard after a few hours to the Yosemite Room and then to the Yosemite Room

15  Courtyard and when I was finally permitted to return to Room # 724 in tremendous pain from
   my spinal injury and the activity, I learned my locker was empty, all of my property and legal

16  materials had been confiscated and everything was a mess and it took me several days to sort out

17  what was left intact and not lost, destroyed, and confiscated.

18      My external hard disk drive was on my bed and my computer was plugged into the wall,

19  although I had deliberately unplugged my computer from the wall when Virgil had gone through

20  the rooms that morning driving the patients, including me, out of our rooms and into the
   courtyard. I demanded to have a copy of the list of my legal materials and other property

21  confiscated and I cited AD #786 in support of my demands. I was told no one made a list and I

22  could have some of my property and legal materials back the next day.

23      I told Demetrius he and his compatriots flagrantly violated AD # 786 during the April 17,

24  2008, search and seizure just like they did on April 23, 2007, and I need a few days with all my
   legal materials and all my other property in my room with me to enable me to finally sort

25

26

27

28                                           3



through all my legal materials and property after the same was kept out of my sight and out of my possession in a room in another part of the building for one-year, and ascertain what is missing. I was permitted to sort through all my legal materials and property in my room over the weekend and I learned that copies of evidence I had mailed to the United States District Court, Eastern District of California, in 2003 for case Number 03-CV-1809-GEB-DAD-P, that counsel needed to prepare my federal appeal before the United States Ninth Circuit Court of Appeals, Case Number 08-15162, is all missing and so are many other documents, reports, and important pieces of evidence and exhibits missing, and I cannot any longer offer these as proof in Ninth Circuit Court of Appeals Case Number 08-15162.

I know that other records are also missing but I have not yet realized the full extent of the loss and damage or actual injury caused by the unlawful and retaliatory actions during the transfer on April 23, 2007, subsequent retention, and during the search and seizure on April 17, 2008, and I will only realize the full extent of the loss and damage or actual injury a little at a time as remember and look for documents I need but then realize are missing. (Note on this April 23, 2007, search below.)

I was violently attacked and threatened with violence several times since I was housed on Ward T-7. On the morning of July 31, 2007, I was talking to one of the staff through the office window and patient Mark Tristman hit me in the side of the face very hard, and staff told Tristman to go and watch television and did not examine me for injury although I told them I felt dazed for awhile. Some staff also make comments to cause other patients to become angry at me and want to physically attack me. For example, on December 3, 2007, defendant Gwen Livones announced over the loudspeaker that none of the patients could go out into the courtyard and smoke because I had not take my medication yet. Some patients yelled at me and accosted me for delaying their smoking time. Staff announcing any patients name over the speaker to take drugs like this is a rules violation, and this is a know technique called "peer pressure" to instigate patients to force other patients to hurry and do something. I cannot stand in line very long or rush due to my spinal injury.

I made several requests to Ed Foulk to move me to a safer ward where I can take it easy on my spinal injury, and a ward closer to the front of the institution because Ward T-7 is located at the utmost part of the institution where I have to walk in pain all the way around the back of the institution to get to all the activities I attend in the front of the institution, which is one mile by pedometer measurement, but Ed Foulk will not move me. Bill Sargent (CCHR) and I also

4

1 made several requests to defendant Foulk and Stolp to me to a safer and closer ward but they
2 refused.

3      I asked Patients' Rights Specialist Mike Hansen to help me get moved to a safer and
4 easier ward and I attached a letter written from Mike Hansen to the original complaint containing
5 evidence about defendant Gwen Livones instigating other patients against me and essentially
6 stating that staff members were planning to lock patients out of their rooms to force them to
7 attend groups. Copies of the letter were confiscated during the April 17, 2008, search and seizure
but I sent copies out of the institution before the seizure.

8      At this point it appears the memo Clinical Director Carmen Caruso wrote directing staff
9 to lock patients out of their rooms to force them to attend groups apparently was revised ex post
facto to make exceptions for injured patients and I was not locked out of my room, but I have
10 been prohibited from going outside in the fresh morning air and Sunshine on any weekday
11 mornings for over a year as punishment and retaliation because I do not believe there is any true
12 or legitimate scientific basis to the industries of psychiatry and psychology and I refuse to
participate something I believe is pseudo science.

13                                   **Count Two**

14      I am 60 years old and I suffer constant severe to excruciating pain from a disabling spinal
15 injury caused by a .38 caliber gunshot wound to my spine years ago and aggravated by a fall at
16 NSH in 2001. My place of confinement at Napa State Hospital has refused to provide proper and
meaningful medical treatment for this injury all this time and the pain and disability has gotten
17 worse due to conditions of confinement on Ward T-7, and some staff directing me to do things
18 that exacerbate my pain, injury, sickness, and disability. This is terrible and violates the federal
19 and state constitutions and laws, the Americans with Disabilities Act, and the Consent Judgment
20 the US Justice Department made with Napa State Hospital on May 2, 2006. The monitor,
Mohamed El-Sabaawi, M.D, appointed to implement and oversee the May 2, 2006, Consent
21 Judgment is responsible in large part for not properly implementing the Consent Judgment and
22 my not getting medical care all these years, and I need discovery to ascertain all the other
23 responsible parties.

24      On July 2, 2008, I was taken to the Queen of the Valley Medical Hospital and given an
25 MRI of my spine. The first page of the results reads in pertinent part "[t]here is a central
compression fracture of the L3 vertebral body with approximately 30-40% loss in height. The
26 fracture is remote in age based on the "rr arrow" [sic] signal intensities." (Emphasis mine.) The

27

28                                        5

1   conclusion to the results on page 2 states the MRI revealed (1) "multi-level degenerative disc
2   disease with lateral disc protrusions at L3-4 and L4-5 resulting in neural formaminal stenosis,"
3   and (2) "chronic (remote) L3 vertebral body compression fracture."

4       I do not know why my custodians let me have an MRI after all these years but I am glad
5   for whatever caused this and my custodians told me I am scheduled to see a spinal surgeon on
6   August 25, 2008, at QVH, and I sincerely hope this is not another false hope like many others in
    the past.

7                                         **Count Three**

8       The harassment and abuse were not so severe from psychiatric technician Virgil Waller
9   when I originally filed the complaint, but after I complained about defendant Gwen Livones and
10  about Virgil abusing other patients his harassment and abuse intensified and I am currently the
11  victim of Virgil's constant harassment and torment and every time Virgil is on duty he does
    things to cause me more pain and he tries his best to make life miserable for me. Virgil and
12  other state workers starved me of food for quite a length of time and I have witnesses to this,
13  Virgil has threatened me several times, and I have caught Virgil stealing my mail. Virgil's
    harassment and abuse intensified after I complained about defendant Gwen Livones and Virgil's
14  abuse intensified even more on September 6, 2007, when I filed a complaint about Virgil
15  physically and psychologically abusing a lower functioning patient named James Colyar. I also
16  complained about Virgil abusing other patients and patients James Colyar and George Rojas
    and these patients were moved away from Virgil to other wards, but I was not moved and Mike
17  Hansen told me and my roommate Ward T-7 and the other abuse is my punishment for not
18  accepting the ideologies of psychiatry and psychiatry, for belonging to CCHR, and Stolp and
19  Foulk think that after enough of this punishment on Ward T-7 I will buckle under and
20  participate.

21      I made the mistake of taking an insanity plea to a charge 20 years ago in 1989 where I
    was over-charged although no one was seriously injured and I might not have done any time at
22  all if I took the matter to trial and was not "duped" into an insanity plea. I never had any health
23  problems before I was confined in the so-called mental "health" system; but in the year 2000 I
24  was told that I was infected with a potentially fatal liver infection, although I had many medical
25  tests in the free world before I was committed and no one ever found anything like that. I have
    not had sexual contact with anyone during the entire 20 years of confinement and I have not used
26
27
28

1  needles in here, and I was told I may have been infected by a re-used blood test needle during a
2  blood test years ago at Napa State Hospital.

3        I have requested proper treatment for many years and on August 5, 2008, I was told I had
   an appointment for the liver infection at the S-Unit Clinic at 2:15 P.M. I left the Ward T-7 at
4  1:45 P.M. and walked to my 2:15 P.M. Clinic appointment. The male nurse at the clinic asked
5  me if I have my charts and I told him that the staff are supposed to bring my charts for me as I
6  cannot carry them due to my spinal injury; and I explained that acting Ward T-7 shift lead Virgil
7  Waller did not arrange for this although Virgil knows staff are supposed to carry my charts for
   me from the meeting in the Ward T-7 Conference Room Bill Sargent attended via speaker
8  telephone with Mike Hansen (Patients' Rights) and several of the Ward T-7 Ancillary staff,
9  including Demetrius Henderson and Virgil present in or around February 13, 2008, and the
10 meeting was called because Virgil was acting shift lead then and hurt me when he would not let
11 the staff carry my heavy charts to a dental appointment for me due to my spine fracture and I had
   to carry the charts myself. After I explained this to the S-Clinic nurse, Dr. Emanuel Obanor, who
12 is not a liver specialist or gastroenterologist, told the nurse I have to carry my own charts, at
13 which point I told Obanor that I have complained to him and other doctors of severe to
14 excruciating back pain for 8 years from a fall I had in 2001, and I had an MRI one month ago
15 that showed I have a fracture in my back, and I do not have to carry my own charts. The bottom
16 line is that Virgil knows that I cannot carry the heavy charts, and Virgil was in charge of Ward
   T-7 and supposed to make arrangements for someone to carry my charts for me and if Virgil says
17 he cannot remember the February 13, 2008, meeting then Virgil does not belong working around
18 disabled or injured people.

19       I was started on treatment for the liver infection in 2001 after my mother complained to
20 Napa State Hospital personal about neglect and malfeasance. I had a liver biopsy in 2001 and I
   was told I was in the third stage of liver infection damage our of four stages and then death. I
21 was responding well to the treatment; however, treatment was stopped due to no fault of my
22 own, although Napa may claim differently, and I am now in the predicament that the plaintiff in
23 *Erickson v. Pardus*, ___ U.S. ___ 127 S.Ct. 2197, 167 L.Ed.2d 1081(2007), found himself in
24 with life-threatening consequences. I have read a lot of literature about liver disease and I have
   read essentially that short of a miracle the disease progresses and causes further liver damage in
25 the absence of proper treatment with the drugs ribaviron and interferon or pegainterferon. (The
26 defendants also confiscated the extensive collection of literature and medical books I had about
27

28

7

1  hepatitis C during the April 2007 or April 2008 search and seizure and did not return even one on
2  the materials and I just realized that while writing this complaint.

3      I have submitted many requests and asked for treatment for the painful spinal injury and
   the liver infection for years but all were ignored by the defendants and other personnel. The acts
4  and omissions of defendant Cooper, defendant Stolp, Program 1 Nursing Coordinator Artheria
5  Morrell, defendant Ed Foulk, Dr. Emanuel Obanor, and others have blocked medical treatment
6  and I will need discovery to ascertain more facts.

7      The acts and omissions of the defendants, taken individually and/or in their totality,
   constitute violations of my First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the
8  United States Constitution and federal laws, and like provisions of the California Constitution
9  and laws. I request jury trial and the Court to exercise pendant jurisdiction for state law claims.

10                                      **CONCLUSION**

11      The defendants and their minions have destroyed, confiscated, and never returned a lot
   of my documentary evidence while ignoring and violating Napa State Hospital Administrative
12  Directives (AD) #786 (Contraband and Searches of Individuals' Property and Areas) and AD
13  #763 (Patients' Rights and Related Procedures); but I sent a lot of evidence out of the institution
14  and I have outside witnesses that can verify the veracity of my claims.

15      I am in a lot of pain and it hurts me even when I am still and I do not have very much
   strength so please examine this amended complaint soon and issue or re-issue process, and
16  please consider injunctive relief and counsel, as I am not the only person in this horrible
17  predicament.

18      If I am in error for mentioning the April 2008, search, seizure, and confiscation and
19  resulting problems or violations above, I ask the Court to bear with me and give that issue
20  another and new case number or permit me to write that claim in another pleading or another
   and new complaint.

21      I declare under penalty of perjury the foregoing is true and correct to the best of my
22  knowledge, information, memory, and belief.

23  Respectfully submitted,                              Date:  8/8/08

24  Danny Atterbury

25

26

27

28                                        8



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

## BUSINESS REPLY MAIL

FIRST-CLASS MAIL    PERMIT NO. 12615    WASHINGTON DC

POSTAGE WILL BE PAID BY UNITED STATES COURTS

US DISTRICT COURT
450 GOLDEN GATE AVE
PO BOX 36060
SAN FRANCISCO CA 94102-9680

Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558

Mailed 8-8-08

